DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Wal-Mart Stores, Inc., commenced this original action in mandamus seeking an order compelling respondent Industrial Commission of Ohio ("commission") to vacate its order deeming that relator authorized arthroscopic surgery and post-operative physical therapy for respondent Lora M. Perdue ("claimant") pursuant to Ohio Adm. Code4123-19-03(K)(5) and to order that the commission adjudicate the request for authorization on its merits. Relator further requested that the writ order the commission to vacate its order extending TTD compensation and to reinstate the order of the DHO that the industrial injury has reached maximum medical improvement ("MMI").
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate concluded that the commission properly determined that relator, through its agent, was in receipt of claimant's written request for treatment (form C-9) at least as of April 2, 2003, and that relator failed to grant or deny claimant's request within ten days of that receipt. Therefore, the magistrate found that the commission properly deemed that relator authorized the requested treatment pursuant to Ohio Adm. Code4123-19-03(K)(5). The magistrate also rejected relator's argument that Ohio Adm. Code 4123-19-03(K)(5)'s ten-day rule conflicts with Ohio Adm. Code 4123-7-02. Lastly, the magistrate concluded that Dr. Tuggle's C-84 opinion was some evidence upon which the commission could rely in finding that the claimant had not reached MMI. Therefore, the magistrate has recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision. Relator first argues that the ordinary meaning of the word "receipt" contemplates a change of possession from one party to another. Although relator's legal representative obtained the C-9 from the Bureau of Workers' Compensation ("BWC"), relator contends it was not in receipt of the C-9 as contemplated by Ohio Adm. Code 4123-19-03(K)(5) to trigger the ten-day response time. At a minimum, relator argues that the word "receipt" as used in the administrative rule is ambiguous and, therefore, requires the application of principles of statutory construction.
 {¶ 4} We agree with relator's assertion that the purpose of the administrative rule at issue is to prevent abuse by self-insured employers in administering and processing claims for medical care by encouraging prompt action. Ohio Adm. Code 4123-19-03(K)(5) states:
The employer shall approve or deny a written request for treatment within ten days of the receipt of the request. If the employer fails to respond to the request, the authorization for treatment shall be deemed granted and payment shall be made within thirty days of receipt of the bill.
 {¶ 5} We also agree with relator that the word "receipt" as used in the context of this administrative rule contemplates a change of possession of a written request from the employee requesting treatment (or the employee's agent or doctor) and the employer. Here, there was no exchange of possession of a written request between the employee and employer. It is undisputed that neither the claimant nor the claimant's doctor sent the C-9 to relator or to relator's representative. Rather, the claimant's doctor mistakenly sent the completed C-9 form to the BWC. It was only by happenstance that relator's legal representative obtained a copy of the C-9 by accessing the BWC's document repository via the internet. Therefore, relator's legal representative did not "receive" the C-9. Rather, she obtained it on her own through the internet. Contrary to the legal conclusion of the magistrate, we find that the word "receive" as used in Ohio Adm. Code 4123-19-03(K)(5) does not mean simply "to come into possession of." Rather, as discussed above, the concept of receipt necessarily entails delivery or change of possession of a written request from the employee requesting treatment (or the employee's agent or doctor) and the employer. That exchange of possession did not occur here. Therefore, we sustain relator's first objection to the magistrate's decision.
 {¶ 6} Relator asserts in its second objection that the magistrate erred by finding that unambiguous language of Ohio Adm. Code 4123-7-02 is subject to and superseded by Ohio Adm. Code 4123-19-03(K)(5). However, the magistrate made no such finding. Rather, the magistrate determined that there was no conflict between the two rules. We agree with that determination. Ohio Adm. Code 4123-19-03(K)(5) simply sets forth a procedural requirement that must be satisfied if the employer wishes to deny the requested treatment. Therefore, we overrule this objection.
 {¶ 7} By its third objection, relator contends that the magistrate erred by finding that the commission did not abuse its discretion when it ordered the payment of TTD compensation. We disagree. As the magistrate points out, even if the commission's reliance on the C-9 was improper for purposes of assessing MMI, Dr. Tuggle opined in his C-84 that the left ankle sprain (an allowed condition) was not at MMI. Dr. Tuggle's C-84 opinion regarding MMI is some evidence supporting the commission's decision to reinstate TTD. Therefore, we overrule relator's third objection.
 {¶ 8} We adopt the findings of fact contained in the magistrate's decision, but not the conclusions of law. We only adopt those portions of the magistrate's conclusions of law which address the issues that are the subject of relator's second and third objections. We further find that a writ of mandamus should be issued ordering the commission to vacate its order deeming that relator authorized the treatment requested in the C-9, and we remand this matter to the commission for a merits determination of the claimant's request for treatment. We deny the remaining relief requested by relator.
Objections sustained in part and overruled in part; writ of mandamusgranted.
Brown, P.J., and Lazarus, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Wal-Mart Stores, Inc., :
 :
 Relator, :
v. : No. 04AP-188
 :
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Lora M. Perdue, :
 :
Respondents. :

 MAGISTRATE'S DECISION Rendered on October 21, 2004 Bricker Maxfield LLC, and Shane M. Dawson, for relator.
Jim Petro, Attorney General, and Stephen D. Plymale, for respondent Industrial Commission of Ohio.
Law Office of Stanley R. Jurus, and Joseph R. Sutton, for respondent Lora M. Perdue.
 IN MANDAMUS {¶ 9} In this original action, relator, Wal-Mart Stores, Inc. ("Wal-Mart"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order deeming granted, pursuant to Ohio Adm. Code 4123-19-03(K)(5), a request for authorization of arthroscopic surgery and post-operative physical therapy filed by respondent Lora M. Perdue ("claimant") and to enter an order adjudicating the request on its merits.
 {¶ 10} Relator also requests that the writ order the commission to vacate its order that extends the payment of temporary total disability ("TTD") compensation and determines that the industrial injury is not at maximum medical improvement ("MMI") and to enter an order that reinstates the June 10, 2003 finding of a district hearing officer that the industrial injury has reached MMI.
Findings of Fact:
 {¶ 11} 1. On September 27, 2002, claimant sustained an industrial injury while employed as a "sales associate" for relator, a self-insured employer under Ohio's workers' compensation laws. On that date, claimant fell from a ladder injuring her left ankle and knee. The industrial claim is allowed for: "left knee/ankle sprain," and is assigned claim number 02-861790.
 {¶ 12} 2. On February 26, 2003, orthopedic surgeon Jeffrey E. Gittins, D.O., wrote:
* * * She continues to have significant pain to the anterior aspect and lateral aspect of the ankle into the medial gutter itself, significant for interarticular pathology, most likely anterior impingement type syndrome. In regards to her knee, this is doing better and showing progress.
IMPRESSION: Anterior impingement syndrome left ankle[.]
PLAN: At this time I discussed the diagnosis with the patient. I do believe she requires left ankle arthroscopy for debridement, synovectomy, and removal of loose bodies for anterior impingement syndrome to her ankle. I fitted the patient for an ankle brace. She will follow [up] with me in approximately one month. She will continue to seek approval for physical therapy, which I believe will be beneficial for the patient. As such we will seek pre-certification for her surgical case as well as physical therapy.
 {¶ 13} 3. On March 12, 2003, Dr. Gittins completed a C-9 form. On the form, he requested authorization for left ankle arthroscopy, post-operative physical therapy, and an ankle brace.
 {¶ 14} 4. Apparently, Dr. Gittins' office faxed the March 12, 2003 C-9 form to the self-insured section of the Ohio Bureau of Workers' Compensation ("bureau"). There is no evidence that Dr. Gittins' office faxed the C-9 to Wal-Mart's workers' compensation administrator, CompManagement Incorporated.
 {¶ 15} 5. On March 26, 2003, Angela McMahan was a paralegal with the law firm of Bricker Maxfield, LLC, who then represented Wal-Mart on claimant's claim. Ms. McMahan had been assigned the task of preparing a letter and package of medical documents to be sent to Leslie A. Friedman, M.D., who was scheduled to examine claimant on April 2, 2003 on behalf of Wal-Mart. On March 26, 2003, Ms. McMahan accessed the bureau's document repository via the internet to obtain medical documents for Dr. Friedman. Among the documents she printed from the bureau's website was Dr. Gittins' March 12, 2003 C-9. Dr. Gittins' C-9 was included in the package of documents that Ms. McMahan sent to Dr. Friedman.
 {¶ 16} 6. Ms. McMahan prepared a six page letter to Dr. Friedman dated March 27, 2003, for the signature of Shane M. Dawson, an attorney with the Bricker Maxfield law firm. Dr. Gittins' March 12, 2003 C-9 is discussed at pages one and four of Mr. Dawson's letter to Dr. Friedman.
 {¶ 17} 7. On April 2, 2003, claimant was examined by Dr. Friedman. In his report, dated April 2, 2003, Dr. Friedman indicates that Dr. Gittins' March 12, 2003 C-9 was among the medical documents he reviewed. Dr. Friedman opined that the injuries claimant sustained on September 27, 2002 have resolved and that her condition has reached MMI.
 {¶ 18} 8. On April 25, 2003, citing Dr. Friedman's report, Wal-Mart moved for the termination of TTD compensation.
 {¶ 19} 9. Following a June 10, 2003 hearing, a district hearing officer ("DHO") issued an order granting Wal-Mart's April 25, 2003 motion. Based on Dr. Friedman's report, the DHO found that the allowed conditions of the claim have reached MMI. The DHO terminated TTD compensation effective June 10, 2003.
 {¶ 20} 10. Claimant administratively appealed the DHO's order of June 10, 2003.
 {¶ 21} 11. On June 13, 2003, claimant moved that Dr. Gittins' March 12, 2003 C-9 request be authorized on grounds that Wal-Mart had failed to grant or deny the request within ten days of its receipt of the request pursuant to Ohio Adm. Code 4123-19-03(K)(5).
 {¶ 22} 12. On July 30, 2003, a commission hearing officer, sitting respectively as a DHO and staff hearing officer ("SHO"), heard claimant's June 13, 2003 motion and claimant's administrative appeal from the DHO's order of June 10, 2003.
 {¶ 23} 13. Sitting as a DHO on July 30, 2003, the hearing officer granted claimant's June 13, 2003 motion in an order stating:
The claimant's request for left ankle arthroscopy and physical therapy per the 03/12/2003 C-9 is approved with payment to be within Bureau of Workers' Compensation guidelines. The claimant testified she was previously given a left ankle brace, therefore, that part of the C-9 request is moot.
The District Hearing Officer finds that this C-9 is approved because the employer failed to grant or deny said request within 10 days of receipt for said request pursuant to OAC 4123-19-03.
The District Hearing Officer finds that the employer received this request at least as of 04/02/2003 because Dr. Friedman, who examined for the employer on such date, specifically reviewed this C-9 in his report dated 04/02/2003. Therefore, the only way Dr. Friedman could have reviewed this C-9 is if the employer had possession of the C-9 prior to 04/02/2003 and sent the C-9 to Dr. Friedman for his review. The employer has not granted or denied such request since receiving it at or before the 04/02/2003 date. Based on the aforementioned review, the C-9 is granted.
 {¶ 24} 14. Sitting as an SHO on July 30, 2003, the hearing officer issued an order vacating the DHO's order of June 10, 2003. The SHO's order of July 30, 2003 states:
* * * [T]he C-86 Motion, filed 04/25/2003, is denied.
The Staff Hearing Officer finds that per 07/30/2003 District Hearing Officer order the claimant has been approved for left ankle arthroscopy and physical therapy. Consequently, because the claimant has been authorized for surgery and physical therapy it is not found that she has reached maximum medical improvement.
Consequently, temporary total benefits are to be paid from date of last payment forward upon submission of medical evidence. This order is also based on Dr. Tuggle's 05/17/2003 C-84.
 {¶ 25} 15. On September 25, 2003, another SHO mailed an order refusing Wal-Mart's administrative appeal from the SHO's order of July 30, 2003.
 {¶ 26} 16. In the meantime, Wal-Mart administratively appealed the DHO's order of July 30, 2003.
 {¶ 27} 17. On September 19, 2003, Wal-Mart's administrative appeal of the DHO's order of July 30, 2003 was heard by an SHO. The September 19, 2003 hearing was recorded and transcribed for the record. Following the hearing, the SHO issued an order affirming the DHO's order of July 30, 2003. The SHO's order of September 19, 2003 states:
The Staff Hearing Officer affirms the authorization of those portions of Dr. Gittens' [sic] C-9 dated 03/12/2003 requesting arthroscopic surgery for the claimant's left ankle and a course of post-operative physical therapy. The Staff Hearing Officer affirms the finding that that portion of the 03/12/2003 C-9 requesting a left ankle brace is moot for the reason that the claimant has already been provided with such a brace.
The Staff Hearing Officer affirms the finding that the C-9 is deemed approved pursuant to the provisions of O.A.C. Rule 4123-19-03(K)(5), which indicate that a self-insured employer has the responsibility to approve or deny a written request for treatment within ten days of receipt of the request, otherwise the treatment shall be deemed approved. While O.A.C. 4123-19-03(I) allows a self-insured employer to hire an "attorney or representative to assist the employer in the handling and processing of workers' compensation claims," such provision does not relieve the employer of its obligation under paragraph (K)(5) of the rules to respond timely to written treatment requests. There is no dispute that at least one of the employer's agents, its legal counsel, was in possession of the 03/12/2003 C-9 prior to 04/02/2003, because that C-9 was part of the examination packet sent to Dr. Friedman by the employer's legal counsel prior to the 04/02/2003 examination he conduceted [sic]. The Staff Hearing [O]fficer finds nothing in Rule 4123-19-03 that contradicts the customary rules of agency, specifically as to the concept that knowledge to a party's agent constitutes knowledge to the party. Therefore, because neither the employer nor its representative responded to the 03/12/2003 C-9 in a timely fashion, it is deemed approved pursuant to the cited rule. This order does not address the merits of the 03/12/2003 C-9 in light of the applicability of Rule 4123-19-03(K)(5).
 {¶ 28} 18. On October 31, 2003, the commission mailed an order refusing Wal-Mart's administrative appeal from the SHO's order of September 19, 2003.
 {¶ 29} 19. On December 6, 2003, the commission mailed an order denying Wal-Mart's request for reconsideration of the September 25, 2003 refusal order.
 {¶ 30} 20. On February 25, 2004, relator, Wal-Mart Stores, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 31} Two general issues are presented: (1) whether the commission abused its discretion by deeming granted, pursuant to Ohio Adm. Code4123-19-03(K)(5), a request for authorization of arthroscopic surgery and post-operative physical therapy; and (2) whether the commission abused its discretion by extending the payment of TTD compensation and determining that the industrial injury has not reached MMI.
 {¶ 32} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 33} Turning to the first issue, Ohio Adm. Code 4123-19-03 sets forth rules of the bureau pertaining to self-insured employers. Ohio Adm. Code 4123-19-03(K)(5) states:
* * * The employer shall approve or deny a written request for treatment within ten days of the receipt of the request. If the employer fails to respond to the request, the authorization for treatment shall be deemed granted and payment shall be made within thirty days of receipt of the bill.
 {¶ 34} The specific issue here is whether Wal-Mart was in "receipt" of Dr. Gittins' March 12, 2003 C-9 as of April 2, 2003, or earlier, within the meaning of Ohio Adm. Code 4123-19-03(K)(5).
 {¶ 35} The parties to this action agree that the Ohio Administrative Code does not define the word "receipt" with respect to its meaning in Ohio Adm. Code 4123-19-03(K)(5). Thus, the word "receipt" has not been given a specialized meaning by any definition contained within the Ohio Administrative Code.
 {¶ 36} As relator points out and the magistrate agrees, the common meaning of "receipt" based upon its context in the rule is "the act or process of receiving." Webster's Third New International Dictionary (1966) 1894.
 {¶ 37} The word "receive" is defined in Webster's Ninth New Collegiate Dictionary (1988) 982, as "to come into possession of."
 {¶ 38} According to relator, the service requirements of Civ.R. 5(B) must be incorporated into the meaning of the word "receipt." According to relator, it cannot be found to have been in receipt of the C-9 unless is can be shown that Dr. Gittins or the claimant served the C-9 in a manner designed to accomplish Wal-Mart's receipt of the C-9. According to relator, Dr. Gittins' failure to serve the C-9 upon Wal-Mart or, in turn, the bureau's failure to serve the C-9 upon Wal-Mart, absolves Wal-Mart from any obligation to respond to the C-9. The magistrate disagrees.
 {¶ 39} In the magistrate's view, the plain meaning of the word "receipt" does not include the service requirements of Civ.R. 5(B). Nor does the plain meaning of the word "receipt" include a requirement that receipt of an object must be accomplished by the design of the sender of the object. Here, unquestionably, Dr. Gittins failed to send the C-9 in a manner designed to accomplish its receipt by Wal-Mart. Only by happenstance did Wal-Mart actually come into possession of a copy of the C-9. Nevertheless, Wal-Mart did come into possession of a copy of the C-9 and, thus, it must be concluded that Wal-Mart, through its legal representative, was in receipt of the C-9.
 {¶ 40} If the meaning of a statute (or administrative rule) is unambiguous and definite, it must be applied as written and no further interpretation is necessary. State ex rel. Burrows v. Indus. Comm.
(1997), 78 Ohio St.3d 78, 81. Unambiguous statutes (or administrative rules) are to be applied according to the plain meaning of the words used. Id. Courts are not free to delete or insert other words. Id.
 {¶ 41} Here, relator asserts that the word "receipt" as used in Ohio Adm. Code 4123-19-03(K)(5) is ambiguous and thus it must be given the meaning that relator prefers to give it. The magistrate concludes that the word "receipt" is not ambiguous as used in Ohio Adm. Code4123-19-03(K)(5). Moreover, relator's attempt at analogizing the concept of "receipt" to the service requirements of Civ.R. 5(B) does not create an ambiguity requiring this court to engraft Civ.R. 5(B) service concepts onto the plain meaning of the word "receipt."
 {¶ 42} Based on the foregoing analysis, the magistrate concludes that the commission properly determined that Wal-Mart was in receipt of Dr. Gittins' March 12, 2003 C-9 at least as of April 2, 2003, the date of Dr. Friedman's report, and that Wal-Mart failed to grant or deny claimant's written request for treatment within ten days of its receipt of the request. Pursuant to Ohio Adm. Code 4123-19-03(K)(5), the commission properly deemed granted claimant's request for authorization of left ankle arthroscopy and post-operative physical therapy.
 {¶ 43} Notwithstanding Ohio Adm. Code 4123-19-03(K)(5)'s mandate to the commission that requested authorization shall be deemed granted when the employer violates the ten-day rule, relator argues here that the commission abused its discretion because Dr. Gittins' February 26, 2003 report indicates that the purpose of the left ankle arthroscopy is to repair left ankle anterior impingement syndrome which is a nonallowed condition of this industrial claim.
 {¶ 44} Wal-Mart may have had a meritorious defense to claimant's C-9 request had it denied the request within ten days of its receipt. However, Ohio Adm. Code 4123-19-03(K)(5) clearly eliminates the employer's claim to a meritorious defense if the employer fails to timely respond to the request.
 {¶ 45} According to relator, Ohio Adm. Code 4123-19-03(K)(5)'s ten-day rule is in conflict with Ohio Adm. Code 4123-7-02 which states:
Medical or other services to be approved for payment must be rendered as a direct result of an injury sustained or occupational disease contracted by a claimant in the course of and arising out of employment for which the claim was allowed by an order of the bureau of workers' compensation or of the industrial commission, or for which the claim was recognized by a self-insuring employer. * * *
 {¶ 46} There is no conflict between the two rules. To the extent that Ohio Adm. Code 4123-7-02 recognizes a right of a self-insured employer to challenge requested medical treatment on grounds that the requested treatment is unrelated to an allowance of the industrial claim, Ohio Adm. Code 4123-19-03(K)(5) sets forth a ten-day rule for employer compliance in order to preserve its right to object to the request. Ohio Adm. Code 4123-19-03(K)(5) simply sets forth a procedural rule for the employer's compliance in order for the employer to claim that the requested treatment is unrelated to an allowance of the industrial claim.
 {¶ 47} The second issue is whether the commission abused its discretion by extending the payment of TTD compensation and determining that the industrial injury has not reached MMI.
 {¶ 48} R.C. 4123.56(A) provides that TTD compensation shall not be paid "when the employee has reached the maximum medical improvement." Supplementing the statute, Ohio Adm. Code 4121-3-32(A)(1) provides the following definition of MMI:
"Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function.
 {¶ 49} A claimant's need for surgery designed to improve one or more allowed conditions of the industrial claim can justify a commission finding that the industrial injury is not at MMI. State ex rel. ValueCity Dept. Stores v. Indus. Comm., 97 Ohio St.3d 187, 2002-Ohio-5810
(commission properly reinstated TTD compensation because claimant underwent surgery to revise the placement of leads for the peripheral nerve stimulator permanently implanted in her left leg).
 {¶ 50} Analysis begins with a review of the DHO's order of June 10, 2003 that terminated TTD compensation based upon a finding that the allowed conditions of the claim had reached MMI. That finding was based upon Dr. Friedman's opinion that the industrial injury had resolved and had reached MMI.
 {¶ 51} In the order, the DHO considered whether Dr. Gittins' February 26, 2003 report could be relied upon to support a finding that the industrial injury was not at MMI. The DHO concluded that Dr. Gittins' report fails to support a finding that negates Dr. Friedman's opinion because Dr. Gittins recommended arthroscopy ankle surgery for anterior impingement syndrome, a condition not allowed in the claim and not alleged to be part of the sprain.
 {¶ 52} The DHO also noted that claimant's counsel had argued that a finding of MMI would not be appropriate because claimant needs treatment for reflex sympathetic dystrophy ("RSD"). However, the DHO further noted that Dr. Gittins had placed the treatment for RSD on hold in order to proceed with the left ankle arthroscopic surgery. The DHO did not mention that the claim had not been allowed for RSD. Apparently, the DHO rejected claimant's argument that a need for treatment for RSD could justify a finding that the industrial injury is not at MMI.
 {¶ 53} Based upon Dr. Friedman's report and rejection of claimant's contentions, the DHO terminated TTD compensation effective the date of the June 10, 2003 hearing pursuant to State ex rel. Russell v. Indus.Comm. (1998), 82 Ohio St.3d 516.
 {¶ 54} On claimant's administrative appeal of the DHO's order of June 10, 2003, the SHO vacated the DHO's finding of MMI based upon the authorization of left ankle arthroscopic surgery and post-operative physical therapy. The SHO failed to note that Dr. Gittins' report indicates that the purpose of the arthroscopic surgery is to address anterior impingement syndrome in the left ankle, a nonallowed condition of the claim. Apparently, the SHO believed that the DHO's MMI finding could be vacated based upon the surgery authorization regardless of whether the surgery's purpose was to address a nonallowed condition. The SHO was incorrect in that regard. Nevertheless, the SHO also extended TTD benefits stating "this order is also based on Dr. Tuggle's 05/17/2003 C-84."
 {¶ 55} As respondents point out here, Dr. Tuggle opined in his C-84 that the left ankle sprain was not at MMI. Clearly, Dr. Tuggle's C-84 opinion regarding MMI is some evidence upon which the commission can rely to vacate the DHO's finding of MMI based upon Dr. Friedman's report.
 {¶ 56} Even though the SHO was incorrect in concluding that the surgery authorization justified vacating the DHO's MMI finding, it was clearly within the SHO's fact-finding discretion to rely upon Dr. Tuggle's C-84 rather than Dr. Friedman's report. Accordingly, there is no basis for overturning the commission's decision to deny Wal-Mart's motion to terminate TTD compensation.
 {¶ 57} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.