[Cite as *State ex rel. Foster v. Indus. Comm.*, 2021-Ohio-4221.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Johnel M. Foster, | : | |
| Relator, | : | |
| | : | No. 20AP-368 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 2, 2020

**On Brief:** *Barkan Meizlish DeRose Wentz McInerney Peifer, LLP, Rachel F. Wenning*, and *Sanford A Meizlish*, for relator.

**On Brief:** *Dave Yost*, Attorney General, *Lauren A. Kemp*, and *Denise A. Gary*, for respondent Industrial Commission of Ohio.

**On Brief:** *Garvin & Hickey LLC, Nathan P. Franzen, Preston J. Garvin*, and *Michael J. Hickey*, for respondent Staffing Solutions, Inc. of Columbus.

IN MANDAMUS

DORRIAN, P.J.

{¶ 1} In this original action, relator, Johnel M. Foster, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") vacate its order terminating temporary total disability ("TTD") compensation to relator.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that a writ

of mandamus issue ordering the commission to vacate its order terminating TTD compensation.

{¶ 3}    On August 25, 2021, the commission filed a motion for an extension of time to file objections to the magistrate's decision.  On August 26, 2021, this court granted the commission's motion, extending the filing date to September 16, 2021 for the filing of objections.  However, no party has filed objections to the magistrate's decision.  The case is now before this court for review.

{¶ 4}    No error of law or other defect is evident on the face of the magistrate's decision.  Therefore, we adopt the findings of fact and conclusions of law contained therein.  Accordingly, relator's request for a writ of mandamus is granted.

*Writ of mandamus granted.*

LUPER SCHUSTER and JAMISON, JJ., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Johnel M. Foster, | : | |
| Relator, | : | |
| v. | : | No. 20AP-368 |
| Industrial Commission of Ohio et al., , | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 19, 2021

*Barkan Meizlish DeRose Wentz McInerney Peifer, LLP, Rachel F. Wenning,* and *Sanford A. Meizlish,* for relator.

*Dave Yost,* Attorney General, and *Lauren A. Kemp,* for respondent Industrial Commission of Ohio.

*Garvin & Hickey LLC, Nathan P. Franzen, Preston J. Garvin,* and *Michael J. Hickey,* for respondent Staffing Solutions, Inc. of Columbus.

### IN MANDAMUS

{¶ 5}   Relator, Johnel M. Foster, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability ("TTD") compensation for relator.

Findings of Fact:

{¶ 6} 1. Relator suffered injuries in the course and scope of her employment with respondent Staffing Solutions, Inc. of Columbus on January 14, 2019 when she slipped on ice and fell, suffering injuries to her right shoulder and neck.

{¶ 7} 2. Relator underwent same-day treatment at Grove City Methodist Hospital Emergency Department including examination and x-rays. (Stip. at 2-46.)

{¶ 8} 3. Relator followed up with consultations with Elizabeth Patterson, D.O., on January 16, 24, and March 13, 2019. (Stip. at 47, 52, 61.) Dr. Patterson reached diagnosis of "unspecified sprain of right shoulder joint" and "sprain of ligaments of cervical spine." (Stip. at 56.) Dr. Patterson prescribed cyclobenzaprine, light-duty work, and ice and rest for the affected joints as of the January 24, 2019 office visit. (Stip. at 59.) On that occasion, Dr. Patterson indicated that she would refer relator for an MRI and orthopedic consultation.

{¶ 9} 4. Relator's claim was initially allowed for "sprain of ligaments of cervical spine; unspecified sprain of right shoulder joint;" with an additional condition subsequently allowed as "partial thickness interstitial tearing; posterior supraspinatus, right rotator cuff." (Stip. at 186.)

{¶ 10} 5. Pursuant to Medco-14 forms filed by Dr. Patterson, relator received TTD compensation.

{¶ 11} 6. Relator participated in physical therapy sessions several times between March 21 and April 2, 2019, which were then discontinued. (Stip. at 113, 116, 118.)

{¶ 12} 7. On April 2, 2019, relator was examined by Stephen Porter Wiseman, D.O., an orthopedic surgeon. (Stip. at 90.) Dr. Wiseman diagnosed a "very low-grade partial-thickness interstitial tearing of posterior supraspinatus between critical zone and footplate * * *. Mild underlying supraspinatus tendinopathy." (Stip. at 91.) "At this time we had a long discussion regarding treatment options. At this point time [sic] I reviewed her MRI findings with her in great detail and I do feel she would benefit from a right subacromial steroid injection to help alleviate some of her inflammatory symptoms." (Stip. at 92.)

{¶ 13} 8. A physician review by Gerald Yosowitz, M.D., confirmed prior diagnoses by treating physicians in a report dated April 24, 2019. (Stip. at 104-05.)

{¶ 14} 9. Relator continued to consult with Dr. Patterson, who produced a report based on a May 3, 2019 follow-up visit. Dr. Patterson reported the following progress notes:

> 4/11/2019. MA/Nurse: 04/11/2019 As per IW- still the same. Pain scale 6/10, states her shoulder popped out yesterday. Work status-not working states therapist discontinued her PT. Scheduled to see ortho. TYH, cma.
>
> 4/26/2019. MA/Nurse: 04/26/19- Per IW- Feels worse; c/o constant pain in RT shoulder, 7/10 today- "I got a shot yesterday & it is worse"; lifting arm and movements make it worse. No other consults. Work status- off work. VLH, CMA.
>
> 5/3/2019. MA/Nurse: 05/03/19- Per IW- Feeling worse since getting a shot; c/o constant burning & stabbing pain in RT shoulder – increases with any movements; 8/10. Injured Worker states she moved up her Ortho appointment to 6/6/19. Work status- off work. VLH, CMA.
>
> * * *
>
> Patient has now had 2 cort[isone] injections, still with a lot of pain. Sees ortho 6/6 surgery is the next step.

(Stip. at 130.)

{¶ 15} 10. Dr. Patterson produced another follow-up visit report on August 16, 2019. Dr. Patterson's recommendations expressed in the report were as follows:

> My recommended therapy/treatment is: Ice and rest the area. Return here in 6 weeks. Await surgery. Continue range of motion exercises. Use [T]ylenol as needed * * *. Other Information: Patient just found out she is 20 weeks pregnant so pain management and meds have been stopped. She sees Dr. Hatheway next week to see if there is any treatment plan during [pregnancy]. She is a high risk pregnancy due to prior pre-term delivery. Patient has now had 2 cort[isone] injections, still with a lot of pain.

(Stip. at 156.)

{¶ 16} 11. Upon referral from Dr. Patterson, relator was seen by G. Luke Seidensticker, M.D., for pain management. Dr. Seidensticker examined relator on June 18, 2019 and produced a report on the same day. (Stip. at 147.) Dr. Seidensticker prescribed Gabapentin and recommended a suprascapular nerve block injection. On June 19, 2019,

Dr. Seidensticker followed up with a letter to support reimbursement for his recommended future treatment:

> I am writing on behalf of my patient, Johnel Foster. This letter is intended to support approval of a suprascapular nerve block. * * * The suprascapular nerve block is indicated for relief of acute & chronic shoulder pain. It is also useful for the diagnosis and treatment of chronic shoulder pain secondary to bursitis, arthritis, degenerative joint and rotator cuff disease. * * *

> Based on my review and examination, I do believe that Ms. Foster[']s pain complaints have been aggravated by or as a result of his [sic] work injury and goal of our plan of care is to use multi-modal [sic] treatment options to help decreased symptoms and improve quality of life.

(Stip. at 146.)

{¶ 17} 12. Relator underwent an independent medical examination by James Sardo, M.D., on September 25, 2019. (Stip. at 160-63.) Dr. Sardo's report provided in pertinent part as follows:

> [T]he injured worker is not able to return to perform position of employment. She continues to have right shoulder pain with restriction of range of motion.

> * * *

> In my medical opinion, the injured worker has reached maximum medical improvement with regard to the allowed claim conditions. She is at maximum medical improvement since her treatment for the allowed conditions is now on hold due to her pregnancy. She will need to resume treatment post-partum.

> * * *

> She will require further orthopedic follow-up to consider surgical intervention. Again, this will be further evaluated post-partum. She has reached maximum medical improvement until she delivers her child.

(Stip. at 161-62.)

{¶ 18} 13. The Ohio Bureau of Workers' Compensation ("BWC") moved to terminate relator's TTD, and the matter was heard before a district hearing officer ("DHO") on December 2, 2019. (Stip. at 164.) By order mailed December 4, 2019, the DHO concluded that he did not have jurisdiction to consider the termination of TTD because no request for TTD was then pending. (Stip. at 164-66.)

{¶ 19} 14. Relator filed an updated Medco-14 form to obtain further TTD payments on December 10, 2019. (Stip. at 172.)

{¶ 20} 15. Pursuant to an appeal by BWC, a staff hearing officer ("SHO") heard the matter on January 30, 2020. (Stip. at 175.) The SHO produced a decision mailed February 5, 2020 ordering termination of relator's TTD compensation:

> It is undisputed the Injured Worker continues to have right shoulder difficulties directly related to the industrial injury. The Injured Worker discovered in August that she was pregnant. This pregnancy has resulted in the cessation of pain management and the consideration of surgical repair of the rotator cuff tear. Dr. Patterson, in her office notes from 08/16/2019 and 12/10/2019, identify surgery as the next treatment step and further note this cannot take place until after the Injured Worker is no longer pregnant. Per Injured Worker's counsel the Injured Worker is 34 weeks along in her pregnancy.
>
> The Staff Hearing Officer is persuaded the allowed conditions have reached maximum medical improvement, in that their condition will, with reasonable probability, continue for an indefinite period of time and that the Injured Worker has reached a treatment plateau at which no fundamental functional or physiological change can be expected, within reasonable medical probability, in spite of continued medical or rehabilitative procedures. (Ohio Adm. Code 4121-3-32)
>
> It is therefore ordered temporary total disability compensation be paid through and terminated effective the date of this hearing, pursuant to *State ex rel. Russell v. Indus. Comm.,* 82 Ohio St.3d 516, 696 N.E.2d 1069 (1998).
>
> This order is based on the 09/25/2019 report of James Sardo, M.D.

{¶ 21} 16. The commission refused relator's appeal and request for reconsideration by orders mailed February 25 and April 10, 2020. (Stip. at 178, 214.)

{¶ 22} 17.  Relator filed her complaint in mandamus in this court on July 28, 2020.

Discussion and Conclusions of Law:

{¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).  A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).  Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 24} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment.  TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant resumes work; (2) the claimant's treating physician provides a written statement that claimant is able to return to the former position of employment or comparable work; (3) work within the capabilities of the claimant is made available by the employer or another employer; or (4) the claimant reaches maximum medical improvement.  R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982); *State ex rel. Cugini v. Timken Co.*, 10th Dist. No. 18AP-261, 2019-Ohio-3013, ¶ 25

{¶ 25} The SHO's order terminating TTD in this case is premised on relator achieving maximum medical improvement ("MMI") with respect to her allowed conditions.  Relator argues that the medical evidence cited by the SHO does not support a finding of MMI, and the commission's consideration of her pregnancy in relation to her medical treatment and eligibility for TTD constitutes discrimination based on sex and, therefore, a violation of the equal protection clauses of the United States and Ohio constitutions.  Because the magistrate agrees with relator that the SHO's report is not supported by the

cited evidence, this decision will not unnecessarily reach the constitutional issues. *State v. Talty,* 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 9.

{¶ 26} Ohio Adm.Code 4121-3-32(A)(1) provides the definition of MMI for workers' compensation purposes:

> 'Maximum medical improvement' is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.

{¶ 27} An assessment of MMI addresses only the allowed conditions, and a non-allowed condition cannot be used to advance or defeat an application. *State ex rel. Bradley v. Indus. Comm.,* 77 Ohio St.3d 239 (1997). "A claimant's need for surgery designed to improve one or more allowed conditions of the industrial claim can justify a commission finding that the industrial injury is not at MMI." *State ex rel. Wal-Mart Stores v. Indus. Comm.,* 10th Dist. No. 04AP-188, 2005-Ohio-1517 (appended Mag.'s Decision at ¶ 49 citing *State ex rel. Value City Dept. Stores v. Indus. Comm.,* 97 Ohio St.3d 187, 2002-Ohio-5810).

{¶ 28} Here, relator persuasively argues that Dr. Sardo's report, apart from the conclusory statement that relator had reached MMI, does not support a finding of MMI in its factual statements. Dr. Sardo clearly stated that relator would need to resume treatment postpartum including further orthopedic follow-up to consider surgical intervention. These statements inescapably reflect the doctor's assessment that relator had not reached a plateau, but rather, would benefit from further treatment. Even Dr. Sardo's statement expressly addressing MMI stated that relator "is at maximum medical improvement *since her treatment for the allowed conditions is now on hold due to her pregnancy.*" (Emphasis added) (Stip. at 161.) This report's conclusion of MMI, therefore, cannot be reconciled with the stated facts and medical observations on which it relies.

{¶ 29} The closest case on point is *State ex rel. Brown v. Plastic Prods. Div.,* 10th Dist. No. 07AP-604, 2008-Ohio-4543. In that case, the claimant received TTD benefits for an allowed condition including injury to her rotator cuff. The claimant was approved for shoulder surgery but was hospitalized for an unrelated blood clot three weeks prior to the scheduled surgery, leading to a postponement. The employer obtained an order from the commission terminating TTD on the basis that the unrelated condition of a blood clot was

the current cause of the claimant's inability to work, and the treating surgeons affirmative answer to the question of whether the patient had reached MMI based on the delay in surgery.

{¶ 30} Upon application for a writ of mandamus, this court granted the writ and ordered the commission to vacate the termination of TTD:

> [T]he * * * query suggests that, as a matter of law, the industrial injury can be determined to be at [maximum medical improvement] if surgery has been put on hold for a blood clot. That suggestion is a misstatement of the law relating to [maximum medical improvement]. As relator here correctly points out, a non-allowed condition cannot be used to advance or defeat a claim for compensation. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). (Magistrate's Decision, P50.)

*Id.* at ¶ 6.

{¶ 31} Assessing the medical evidence that the injured worker's blood clot treatment would continue for several months, delaying surgery, this court further held as follows:

> On such facts, we cannot say that relator's inability to undergo surgery as a result of the Coumadin therapy would continue, with reasonable probability, for an indefinite period of time so as to render her condition other than temporary and permit a finding of maximum medical improvement.

*Id.* at ¶ 10.

{¶ 32} The facts in the present case are squarely aligned with *Brown.* A non-allowed condition (pregnancy) interrupted treatment that medical providers clearly contemplated as promising some improvement, *i.e.*, progress towards a higher plateau. Relator's projected interruption of further treatment was not of indefinite duration. Relator was 20 weeks pregnant when this condition was first discussed with Dr. Patterson and perhaps 14 weeks from term when examined by Dr. Sardo. All medical evaluations of relator indicated that she was unable to work at the time of cessation of treatment, and this inability was not caused by her pregnancy. Although, unlike the claimant in *Brown*, no surgery was specifically scheduled for relator, both Drs. Patterson and Sardo clearly predicated future treatment on the possibility of surgery, which could not be seriously contemplated until relator was no longer pregnant. The nerve block injection recommended by Dr. Seidensticker was also deferred pending pregnancy.

{¶ 33} In summary, the medical opinions relied upon by the SHO do not support a conclusion of MMI, regardless of whether the physician applied the term in a conclusory manner, because the finding of MMI is based on the non-allowed condition of pregnancy. The SHO's order is not supported by some evidence, and the commission therefore abused its discretion in terminating TTD compensation for relator.  It is therefore the decision and recommendation of the magistrate that a writ issue ordering the commission to vacate its order terminating TTD compensation.

<u>/S/ MAGISTRATE</u>
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).