**[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 405.]**

THE STATE EX REL. GREGG, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Gregg v. Indus. Comm*., 2000-Ohio-366.]

*Workers' compensation—Industrial Commission's denial of temporary total disability compensation not an abuse of discretion, when.*

(No. 98-1553—Submitted February 22, 2000—Decided May 1, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD07-928.

_____

{¶ 1} Appellant-claimant Katie Lambert Gregg was injured in 1980, while working for Pentasote, Inc. Her workers' compensation claim was allowed for "right arm/elbow sprain; low back sprain; degenerative disc disease low back; aggravation of pre-existing adjustment disorder with mixed emotional features." On February 5, 1993, claimant moved appellee, Industrial Commission of Ohio, for temporary total disability compensation ("TTC") commencing on March 20, 1991. In support, claimant submitted reports from Drs. D.D. Kackley and Nicholas Peponis. The latter report consisted of an MRI evaluation, which confirmed the presence of the degenerative disc disease that was allowed earlier. Dr. Kackley's exam of claimant's physical impairment revealed a "significant loss of lumbar reserve and function." He additionally reported:

"[Claimant's] symptoms are progressing and her attending physicians have suggested the possibility of surgery to the low back. Before that was considered I would think that an effort at a significant weight loss would be some definite help. She certainly does have a significant problem and along with her depression at the present time I do not think she is capable of carrying out any significant work activity. She is in need of a weight loss program as well as a re-evaluation of the low back and the possibility of some surgical management of the low back problem.

1

If such was possible, she would be continued on temporary total impairment for a time and given a chance to loose [*sic*] weight and undergo a diagnostic workup.

"If the above is not carried out, I feel that she does represent a relatively high loss of lumbar reserve and function withs [*sic*] some instability * * *. I cannot help but feel that a total workup and the possibility of some surgical management after a weight reduction program has been accomplished, would allow her to resume significant activity.

"Although this has been going on for the last 12 years, I feel that she would benefit by a further effort at diagnosis and treatment.

"In my opinion this individual is in need of a diagnostic workup as well as some psychiatric help. If such can be carried out she would be continued on temporary total impairment during that time and the possibility of surgical management re-evaluated."

{¶ 2} Also in the claimant's file were medical reports from Drs. R.L. Ayers, Thomas E. Baker, and Lee Howard. Attending physician Ayers certified claimant as permanently and totally disabled in late 1990. Treatment, at that time, consisted of medical and physical therapy, the latter ultimately proving to be of little value according to Dr. Ayers. Dr. Ayers also noted claimant's depression, but did not request authorization for psychiatric consultation at that time.

{¶ 3} Dr. Baker opined on March 20, 1991 that claimant should "[c]ontinu[e] with the medication that she is presently on. Consideration could be given to repeating her MRI, obtaining an EMG of the lumbar spine and both legs. She apparently is seeing a psychologist but she could be seen and treated at the Bureau of Rehabilitation for pain and stress management. A pool exercise program might be beneficial to alleviate some of her symptoms. I would recommend a weight loss exercise program, nonsteroidal anti-inflammatory medication and perhaps a TENS unit. If her symptoms continue or increase, she may eventually need a lumbar decompression and fusion."

**{¶ 4}** Dr. Howard evaluated claimant's allowed psychological/psychiatric condition. He felt that claimant's industrially related psychopathology did not prevent a return to her former position of employment. He opined that minimum treatment was required, and advised against referral to the commission's rehabilitation division, "as the claimant does not report any significant motivation for change at this time."

**{¶ 5}** In early February 1993, Dr. Ayers completed a C84 physician's report supplemental, which certified claimant as still temporarily and totally disabled. Clinical findings in support involved claimant's back exclusively and were repeated in a July 1993 C84 report. Dr. Ayers also requested authorization for continued unspecified treatment, a psychiatric consult with Dr. Ronald C. Moomaw, and authorization for a weight-loss program.

**{¶ 6}** A commission district hearing officer denied TTC. That order was eventually vacated by the Court of Appeals for Franklin County, which issued a limited writ of mandamus because the commission's order had failed to adequately explain its reasoning and the evidence on which it relied.

**{¶ 7}** The commission vacated the order and referred claimant's file to Dr. James M. Coulter, the commission's chief medical advisor, for review. Dr. Coulter reported:

"I have reviewed the medical reports of Drs. Ayers, Baker, Kackley, and Howard and I have accepted the findings regarding the claimant's allowed conditions of right elbow, lower back, degenerative disc disease low back; aggravation of pre-existing adjustment disorder with mixed emotional features.

"Dr. Baker reported in his March 20, 1991 examination that further evaluation should be considered and that, 'she [claimant] may eventually need a lumbar decompression and fusion.' Examining for the Industrial Commission on December 1, 1992, Dr. Kackley stated, 'However, from the medical standpoint I cannot help but feel that a total workup and the possibility of some surgical

management after a weight reduction program, would allow her to resume significant activity. I feel she would benefit by a further effort at diagnosis and treatment.' If this treatment were being pursued by the claimant, the condition might be considered temporary. However, the claimant has not elected to pursue these diagnostic and treatment procedures in the 16 years that have passed since the injury. * * * Based on the claimant[']s actual course of treatment which apparently does not involve a choice to elect surgery, its seems reasonable to conclude that these conditions have in fact reached maximum medical improvement after 16 years and are permanent as of March 20, 1991."

{¶ 8} A staff hearing officer again denied TTC, writing:

"The assertion that claimant's disability is still temporary 16 years after the injury is based upon mere possibility that surgery may be considered. However, the Staff Hearing Officer finds that after 16 years[,] claimant has not elected surgery.

"Based upon the opinion of Dr. James Coulter dated May 8, 1996 and the fact that the claimant's actual course of treatment has not involved a choice to elect surgery, it is found that claimant's allowed conditions have in fact reached maximum medical improvement and are permanent as of March 20, 1991."

{¶ 9} Claimant filed another complaint in mandamus, again alleging that the commission abused its discretion in denying TTC. The court of appeals refused the writ, after finding that Dr. Coulter's report was "some evidence" supporting TTC denial.

{¶ 10} This cause is now before this court upon an appeal as of right.

————————————

*Phillip J. Fulton & Associates* and *William A. Thorman III,* for appellant.

*Betty D. Montgomery*, Attorney General, and *Jon D. Grandon*, Assistant Attorney General, for appellee.

————————————

4

*Per Curiam.*

**{¶ 11}** Debate centers on Dr. Coulter's report. That report arose from Dr. Coulter's review of the medical evidence in file, not from personal examination of the claimant, and has prompted three challenges. Upon review, we find claimant's arguments to be unpersuasive.

**{¶ 12}** Claimant initially asserts that Dr. Coulter failed to consider her allowed psychological/psychiatric condition, disqualifying his report from consideration. Dr. Coulter's report, however, lists the psychiatric ailment among the enumerated allowed conditions. Equally important, Dr. Coulter's review of Dr. Howard's psychological report further demonstrates Coulter's awareness of the condition.

**{¶ 13}** Claimant also challenges Dr. Coulter's failure to consider the reports of Drs. Moomaw, Earl Greer, Steven E. Zartman, and Peponis. While indeed true, the commission's failure to consider these reports, in this instance, is not fatal. Peponis's report is simply an MRI reading that confirms the existence of claimant's allowed degenerative disc condition. It does not comment on the potential improvement in that condition or its effect on claimant's ability to work. As to the remaining three reports, none of them advances claimant's cause, which undermines claimant's assertion of harm. Of the three doctors, only Greer commented on claimant's ability to return to her former position of employment, and Greer found that claimant's psychological condition was not work-prohibitive. This does not advance claimant's TTC request, nor do the reports of Moomaw or Zartman, which avoid the question entirely. We find, therefore, that these omissions do not affect the probative quality of Dr. Coulter's report.

**{¶ 14}** Claimant argues last that it was impermissible for Dr. Coulter to conclude that based on claimant's past treatment, there was no potential for future improvement. This contention fails as well. Dr. Coulter concedes that *if* claimant were to undergo surgery, then improvement might occur. However, based on the

fact that claimant, by that time, had had sixteen years to seek surgery but did not do so, Dr. Coulter excluded it as a realistic possibility and assessed MMI.  Thus, the commission's reliance on Dr. Coulter's report was not an abuse of discretion.

{¶ 15} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

—————————