DECISION
{¶ 1} Relator, Vicky C. Brown, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order *Page 2 
denying her temporary total disability compensation for the closed period August 7, 2006 through December 12, 2006, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Because no objections were filed to the magistrate's findings of fact, we adopt them.
I. Magistrate's Findings of Fact {¶ 3} Following her industrial injury, relator saw an orthopedic surgeon, Bruce Eric Heck, M.D., who wrote in his office notes that relator consented to surgery on her injured right shoulder. On June 21, 2006, he submitted a C-9 requesting authorization for a "rotator cuff repair" scheduled for July 26, 2006. Through its third-party administrator, relator's employer approved the surgery on June 22 but began paying temporary total disability compensation beginning June 26 due to its inability to accommodate relator's medical restrictions.
 {¶ 4} According to the notes of Dr. Heck's certified nurse practitioner, relator was hospitalized beginning July 6 for treatment of a blood clot. As a result of the ensuing Coumadin therapy, relator's surgery was cancelled. On July 19, Dr. Heck completed a MEDCO-14 form indicating relator could return to work with restrictions from July 18 to September 20, 2006. On the MEDCO form, he indicated relator had not reached maximum medical improvement.
 {¶ 5} In a letter dated July 30, 2006, the employer's claims representative, Kim Yoder, asked Dr. Heck whether "this patient reached maximum medical improvement for the allowed conditions of this claim based on the fact that surgery has been put on hold *Page 3 
for a blood clot? * * * Has the patient reached Maximum Medical Improvement as defined above until time that the approved surgery can be performed?" Dr. Heck responded affirmatively. As a result, the employer terminated relator's temporary total disability compensation. Although Dr. Heck, in a September 24, 2006 MEDCO-14 form, again indicated relator had not reached maximum medical improvement, the district hearing officer and the staff hearing officer denied relator's request for temporary total disability compensation during the closed period at issue based on Dr. Heck's response to the claims representative's query.
II. Magistrate's Conclusions of Law {¶ 6} On those facts, the magistrate recognized the resulting issue is whether the response of relator's orthopedic surgeon, Dr. Heck, to the July 30, 2006 inquiry of the employer's claims representative regarding relator's maximum medical improvement is some evidence on which the commission could rely to deny temporary total disability compensation for the closed period at issue. The magistrate determined the answer is no, because the claims representative's question to Dr. Heck misstates the law. As the magistrate explained, "[t]he * * * query suggests that, as a matter of law, the industrial injury can be determined to be at [maximum medical improvement] if surgery has been put on hold for a blood clot. That suggestion is a misstatement of the law relating to [maximum medical improvement]. As relator here correctly points out, a non-allowed condition cannot be used to advance or defeat a claim for compensation. State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452." (Magistrate's Decision, ¶ 50.)
 {¶ 7} Because the magistrate concluded Dr. Heck's response is not some evidence on which the commission could rely, the magistrate determined the court should *Page 4 
issue a writ of mandamus. The Industrial Commission and the employer, Plastics Products Division, both filed the same objections to the magistrate's conclusions of law.
III. Objections OBJECTION NO. 1
 The Magistrate erred in finding that the Commission abused its discretion when some evidence shows that the claimant's condition was static not temporary during the disputed period.
 OBJECTION NO. 2
 The Magistrate erred by finding that the Commission used the wrong standard for eligibility of [temporary total disability].
Because the objections are interrelated, we address them jointly. Together they require us to decide whether relator is entitled to temporary total disability compensation for the four-month period her shoulder surgery was delayed due to Coumadin therapy for a non-industrial blood clot.
 {¶ 8} None of the parties to the action disputes the magistrate's general proposition of law that a non-allowed condition cannot be used to advance or defeat a claim for compensation. Here, even absent the blood clot, relator was unable to return to her former position of employment due to medical restrictions arising from her industrial injury. Moreover, her employer was unable to provide her with a job that accommodated her medical restrictions. Under such circumstances, relator ordinarily would be entitled to temporary total disability compensation.
 {¶ 9} Similarly, the parties do not seriously dispute the commission's general proposition that "[a] condition is not temporary when the condition will, `with reasonable *Page 5 
probability, continue for an indefinite period of time without any present indication of recovery therefrom.'" (Industrial Commission Objections.) State ex rel. Moran v. Indus. Comm., Franklin App. No. 01AP-1446, 2002-Ohio-4307, ¶ 32, citing State ex rel. Miller v. Indus.Comm. (1988), 36 Ohio St.3d 58. Thus, under the commission's definition, relator's condition would no longer be temporary if it would continue for an indefinite period of time without any present indication of recovery, and temporary total disability compensation would be inappropriate.
 {¶ 10} Nothing in the record, however, suggests relator's Coumadin therapy would continue for an indefinite period of time. Indeed, although Dr. Heck initially indicated he felt the therapy would continue for many months, the evidence at the time of the hearings before the district hearing officer and the staff hearing officer demonstrated the therapy lasted no more than four months. On such facts, we cannot say that relator's inability to undergo surgery as a result of the Coumadin therapy would continue, with reasonable probability, for an indefinite period of time so as to render her condition other than temporary and permit a finding of maximum medical improvement. Cf. State ex rel. Greggv. Indus. Comm. (2000), 88 Ohio St.3d 405 (noting that if claimant were to undergo surgery, improvement might occur, but the claimant had 16 years to seek surgery and did not do so, permitting the doctor to exclude it as a reasonable possibility and to diagnose maximum medical improvement).
 {¶ 11} Given the basic proposition that a non-allowed condition cannot defeat temporary total disability compensation where it is otherwise warranted, coupled with the short period of time the surgery here was delayed, we agree with the magistrate that the claim representative's inquiry to Dr. Heck misstated the law and thus was not some *Page 6 
evidence on which the commission could rely. While the employer correctly asserts no prior administrative finding of maximum medical improvement is necessary to unilaterally terminate relator's temporary total disability if her treating physician finds the employee reached maximum medical improvement, Dr. Heck's statement, premised on a misstatement of the law, is not some evidence on which the employer could rely to unilaterally terminate relator's temporary total disability compensation.
 {¶ 12} Accordingly, respondents' objections are overruled.
 {¶ 13} Following independent review pursuant to Civ. R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we grant a writ of mandamus that orders the Industrial Commission of Ohio to vacate its order denying temporary total disability compensation for the closed period from August 7 through December 12, 2006, and to enter an order in a manner consistent with the magistrate's decision, adopted here, that either grants or denies temporary total disability compensation.
Objections overruled; writ granted.
 KLATT and FRENCH, JJ., concur. *Page 7 
 APPENDIX A MAGISTRATE'S DECISION Rendered March 19, 2008 IN MANDAMUS {¶ 14} In this original action, relator, Vicky C. Brown, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order *Page 8 
denying her temporary total disability ("TTD") compensation for the closed period August 7 through December 12, 2006, and to enter an order granting said compensation.
Findings of Fact: {¶ 15} 1. On March 16, 2005, relator sustained an industrial injury while employed as a production finisher in the manufacture of plastic products. On the date of injury, relator was employed by The Budd Company, the predecessor of respondent Plastics Products Division ("employer"), a self-insured employer under Ohio's workers' compensation laws. The employer certified the industrial claim (No. 05-866135) for "sprain right shoulder; rotator cuff tear, right; right bicipital tenosynovitis."
 {¶ 16} 2. On May 31, 2006, relator was seen by orthopedic surgeon Bruce Eric Heck, M.D. Following the examination, Dr. Heck wrote in his office note that relator had consented to proceed with right shoulder surgery.
 {¶ 17} 3. On June 21, 2006, Dr. Heck submitted a C-9 requesting authorization for a "rotator cuff repair" scheduled for July 26, 2006. The employer, through its third-party administrator Gallagher, Bassett Services, Inc. ("Gallagher"), approved the surgery on June 22, 2006.
 {¶ 18} 4. Because the employer could no longer accommodate relator's medical restriction and had authorized pre-operative procedures, the employer began the payment of TTD compensation beginning June 26, 2006.
 {¶ 19} 5. On July 18, 2006, relator returned to Dr. Heck's office. On July 18, 2006, Dr. Heck's certified nurse practitioner Linda Young noted that relator had been hospitalized from July 6 through July 11, 2006 for treatment of a blood clot. Young also *Page 9 
noted that the right shoulder surgery had been cancelled because of the blood clot. Young further wrote:
 * * * Vicky comes today in follow up for her right shoulder BWC claim. Before her surgery could be done, she developed a blood clot in her left lower extremity. She is on Coumadin now. She is in the process of being treated. I cautioned her that it will be likely many months before we can get her surgery accomplished. She is concerned about her ability to work. We will have her continue working with restrictions and hope her employer will be able to continue to accommodate her work restrictions. The work restrictions will include no lifting with her right arm and no work above her waist level. We will see her back in the office in 2 months. * * *
 {¶ 20} 6. On July 19, 2006, Dr. Heck completed a MEDCO-14 form which is captioned "Physician's Report of Work Ability." On the form, Dr. Heck indicated that relator may return to work with restrictions from July 18 to September 20, 2006. The restrictions were no lifting with the right arm and no work above the waist with the right arm. Dr. Heck marked the box to indicate that the restrictions were temporary.
 {¶ 21} 7. The MEDCO-14 form also asks the physician:
 Has the work-related injury(s) or occupational disease reached a treatment plateau at which no fundamental functional or physiological change can be expected despite continuing medical or rehabilitative intervention (maximum medical improvement)[?]
In response to the above query, Dr. Heck marked the "No" box.
 {¶ 22} 8. By letter dated July 30, 2006, a Gallagher claims representative, Kim Yoder, posed the following queries to Dr. Heck:
 * * * In your medical opinion, has this patient reached maximum medical improvement for the allowed conditions of this claim based on the fact that surgery has been put on hold for a blood clot? (BWC defines maximum medical improvement as "A treatment plateau (static or well stabilized) in *Page 10 
which no fundamental, functional, or physiological change can be anticipated within a reasonable probability despite further medical or rehabilitative procedures. A patient may need supportive care to maintain this level of function.") Please respond below:
 Has the patient reached Maximum Medical Improvement as defined above until time that the approved surgery can be performed?
 {¶ 23} On August 7, 2006, Dr. Heck marked the line aside the preprinted "Yes" response.
 {¶ 24} 9. By letter dated August 11, 2006, Yoder informed relator:
 * * * [W]e are in receipt of the attached response from Dr. Heck regarding maximum medical improvement.
 Please be advised that as of August 7, 2006, you are not eligible for Temporary Total benefits in this claim.
 {¶ 25} 10. Based on Dr. Heck's August 7, 2006 response to the letter, the employer terminated TTD compensation.
 {¶ 26} 11. On September 5, 2006, relator moved for reinstatement of TTD compensation.
 {¶ 27} 12. On September 20, 2006, relator returned to Dr. Heck's office. On that date, Young noted: "Not working [at] present — off work — employer won't allow her to come back on restrictions given."
 {¶ 28} Young also wrote: "She had subsequently developed a blood clot before surgery could be performed and she is now awaiting resolution of her blood clot and being treated with Coumadin before her surgery can be done."
 {¶ 29} 13. On September 24, 2006, Dr. Heck completed another MEDCO-14. On the form, he indicated that relator may return to work with restrictions from September 20 *Page 11 
to November 2, 2006. He noted the following restrictions: "No lifting [with right] arm. No work above waist [with right] arm. Off work if employer cannot accommodate restrictions."
 {¶ 30} Dr. Heck again marked the "No" box in response to the query as to whether the industrial injuries are at maximum medical improvement ("MMI").
 {¶ 31} 14. Following an October 25, 2006 hearing, a district hearing officer ("DHO") issued an order denying relator's motion for reinstatement of TTD compensation. The DHO's order explains:
 It is the order of the District Hearing Officer that temporary total compensation is terminated effective 8/07/2006, the date the treating physician opined that the injured worker has reached maximum medical improvement for the allowed conditions in the claim.
 The District Hearing Officer notes that the injured worker was scheduled to have surgery based on the allowed conditions in this claim, however, during a physical for the surgery it was determined that the injured worker has a blood clot and the surgery can not yet be performed. In a letter dated 7/30/2006, Dr. Heck was asked if the injured worker had reached maximum medical improvement for the allowed conditions of this claim based on the fact that surgery has been put on hold for a blood clot. Dr. Heck opined that the injured worker had reached maximum medical improvement and signed the letter on 8/07/2006.
 Any temporary total compensation paid subsequent to this finding is to be considered an overpayment and is to be recouped pursuant to Ohio Revised Code 4123.511(J).
 All evidence in the file was reviewed and considered prior to rendering this decision. This decision is based on the 7/30/2006 letter signed by the provider of record, Dr. Heck, on 8/07/2006.
 {¶ 32} 15. Relator administratively appealed the DHO's order of October 25, 2006. *Page 12 
 {¶ 33} 16. On November 16, 2006, Dr. Heck completed another MEDCO-14. On this form, Dr. Heck indicated that relator may return to work with restrictions from November 2 to December 27, 2006. Dr. Heck also indicated that the industrial injury had not reached MMI.
 {¶ 34} 17. On November 20, 2006, Dr. Heck completed another MEDCO-14. On this form, he also indicated that the industrial injury had not reached MMI.
 {¶ 35} 18. On a C-84 dated November 20, 2006, Dr. Heck certified a period of TTD beginning December 13, 2006 to an estimated return-to-work date of January 6, 2007. On the form, Dr. Heck wrote: "[status post right shoulder surgery.]"
 {¶ 36} 19. On December 13, 2006, relator underwent right shoulder surgery performed by Dr. Heck.
 {¶ 37} 20. On April 20, 2007, a staff hearing officer ("SHO") heard relator's administrative appeal from the DHO's order of October 25, 2006. Following the hearing, the SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 10/25/2006, is MODIFIED to the following extent.
 Therefore, the C-86 Motion filed by the injured worker on 09/05/2006 is DENIED.
 The injured worker requests a closed period of Temporary Total Disability Compensation from 08/07/2006 through 12/12/2006. The self-insured employer began paying Temporary Total Disability Compensation on 12/13/2006 based upon surgical intervention authorized and performed on that date.
 The disputed period of Temporary Total Disability Compensation results from the injured worker being scheduled for surgery on 07/06/2006 [sic] and developing a non-industrial blood clot that delayed the surgical intervention. Injured *Page 13 
Worker's counsel argues that the four month delay in surgical intervention is properly subject to payment of Temporary Total Disability Compensation. The employer argues that the treating physician indicated the injured worker was at Maximum Medical Improvement for the allowed conditions until any surgical intervention could be performed.
 The treating physician, Dr. Heck, signed a statement on 08/07/2006 indicating that the injured worker had reached Maximum Medical Improvement until such time that the approved surgery could be performed. There was a delay in being able to perform the surgery of approximately four months due to the non-industrial blood clot and its sequelae.
 The injured worker's counsel argues [State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452] and [State ex rel. Ignatious v. Indus. Comm., 99 Ohio St.3d 285, 2003-Ohio-3627] apply and the Temporary Total Disability Compensation should be paid. The employer argues that the injured worker's treating physician had offered an opinion as to Maximum Medical Improvement and the injured worker was at Maximum Medical Improvement until surgical intervention occurred, and as the surgical intervention was delayed Temporary Total Disability Compensation was not appropriately paid until the surgical intervention occurred in December of 2006.
 Alternatively, injured worker's counsel argues that [State ex rel. Spurgeon v. Indus. Comm.
(1998), 82 Ohio St.3d 583] applies in this matter and the treating physician repudiated his Maximum Medical Improvement finding.
 This Staff Hearing Officer finds the employer['s] argument regarding Maximum Medical Improvement to be most persuasive in this matter. The treating orthopedic surgeon indicated that until surgery was performed the injured worker was at Maximum Medical Improvement. An injured worker who refused surgery or who was unable to undergo surgery due to a non-industrial cause could not receive Temporary Total Disability Compensation indefinitely. The fact that the injured worker was only delayed from having surgery for a four month period is both good for the employer and good for the injured worker. However, it does not dispel the fact that the injured worker was unable to have the surgery and would not improve further without the surgery. As such, this Staff *Page 14 
 Hearing Officer finds that Maximum Medical Improvement as defined within O.A.C. Section 4121-3-32(A)(1) was met and the treating physician opined it had occurred as of 08/07/2006. The injured worker was, as of 08/07/2006, at a treatment plateau at which no fundamental functional or physiological change was expected within a reasonable medical probability in spite of continuing medical or rehabilitative procedures. The only exception was surgical intervention, which was not an option at that time. Therefore, Maximum Medical Improvement is found to have been appropriately applied by the treating physician.
 The argument by injured worker's counsel that the treating physician repudiated his Maximum Medical Improvement opinion of 08/07/2006 is not found to be persuasive. The mere fact that the injured worker's physician continued to fill out MEDCO-14 forms is not found to repudiate the statement of Maximum Medical Improvement. The treatment plateau was unchanged until surgical intervention could be undertaken, and surgical intervention was not a reasonable option until the underlying non-industrial medical condition had resolved.
 As such, this Staff Hearing Officer finds it appropriate to deny payment of Temporary Total Disability Compensation for the closed period of 08/07/2006 through 12/12/2006 as the injured worker had achieved Maximum Medical Improvement until the new and changed circumstances of surgical intervention occurred on 12/13/2006.
 This Staff Hearing Officer does not accept the employer['s] invitation to prospectively find the injured worker to be at Maximum Medical Improvement in the future based upon the 04/04/2007 report of Dr. Lieser. The contingency that could occur in the future and lead to Maximum Medical Improvement may or may not occur. As such, this Staff Hearing Officer will not accept the request to proactively find Maximum Medical Improvement has occurred or will occur.
 The Staff Hearing Officer reviewed and considered all evidence on file at the time of the hearing.
 This order is based upon the report of Dr. Heck, 08/07/2006. *Page 15 
 The remainder of the order of the District Hearing Officer is affirmed in all other respects.
(Emphasis sic.)
 {¶ 38} 21. On May 11, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 20, 2007.
 {¶ 39} 22. On July 30, 2007, relator, Vicky C. Brown, filed this mandamus action.
Conclusions of Law: {¶ 40} The issue is whether Dr. Heck's August 7, 2006 response to Kim Yoder's July 30, 2006 query regarding MMI is some evidence upon which the commission can rely to deny TTD compensation for the closed period beginning August 7, 2006.
 {¶ 41} Finding that Dr. Heck's August 7, 2006 response is not some evidence upon which the commission can rely, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 42} R.C. 4123.56(A) provides that payments of TTD compensation should not be made for the period "when the employee has reached the maximum medical improvement."
 {¶ 43} Supplementing the statute, Ohio Adm. Code 4121-3-32(A)(1) provides:
 "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.
 {¶ 44} Following the commission's termination of TTD compensation based upon a finding that the allowed conditions have reached MMI, the claimant has the burden of showing new and changed circumstances to obtain further TTD compensation. State ex *Page 16 rel. Josephson v. Indus. Comm., 101 Ohio St.3d 195, 2004-Ohio-737. The only new and changed circumstance sufficient to reinstate a worker to TTD compensation is the worsening of the allowed conditions accompanied by a prognosis that the worsening is only temporary. Id.
 {¶ 45} Case law indicates that reinstatement of TTD after a commission MMI determination can be based upon the claimant's need for surgery if the Josephson requirements are met. See State ex rel. Value City Dept.Stores v. Indus. Comm., 97 Ohio St.3d 187, 2002-Ohio-5810; State ex rel.Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158, 169.
 {¶ 46} Here, as of July 30, 2006, the date of Yoder's letter to Dr. Heck, there was no finding by the commission that the allowed conditions of the claim had reached MMI, nor was there an opinion or statement from Dr. Heck or any attending physician that the industrial injury had reached MMI.
 {¶ 47} Accordingly, as of July 30, 2006, relator was not required to show new and changed circumstances to continue the payments of TTD compensation. While the need for surgery can be the basis for the reinstatement of TTD compensation after a determination of MMI, the need for surgery is ordinarily not a requirement to continue TTD compensation where there has been no prior determination of MMI.
 {¶ 48} It is clear that Yoder's query to Dr. Heck was premised upon a misapplication of the caselaw relating to the reinstatement of TTD compensation following a determination of MMI. *Page 17 
 {¶ 49} Yoder's July 30, 2006 query again states: "In you medical opinion, has this patient reached maximum medical improvement for the allowed conditions of this claim based on the fact that surgery has been put on hold for a blood clot?"
 {¶ 50} The above-quoted query suggests that, as a matter of law, the industrial injury can be determined to be at MMI if surgery has been put on hold for a blood clot. That suggestion is a misstatement of the law relating to MMI. As relator here correctly points out, a non-allowed condition cannot be used to advance or defeat a claim for compensation.State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. That is, TTD compensation cannot be denied simply because relator may have been disabled by a non-allowed blood clot during the time she was also disabled by the shoulder condition. Id. Yoder's query incorrectly suggests that the disabling blood clot can place the industrial injury at MMI until such time as the blood clot is resolved.
 {¶ 51} While it can be appropriate for the employer to ask the attending physician for his or her opinion on MMI based upon the definition of MMI, it is inappropriate to ask the physician for his or her opinion on MMI based upon a misapplication of the law.
 {¶ 52} Given the above analysis, it is the magistrate's view that Dr. Heck's August 7, 2006 response to Yoder's query cannot be accepted as some evidence that the industrial injury was at MMI as of August 7, 2006.
 {¶ 53} The record here undisputedly shows that, except for the August 7, 2006 response to Yoder's query, Dr. Heck consistently opined that the industrial injury was not at MMI. Under these circumstances, it is clear that Dr. Heck's August 7, 2006 response is premised upon an inaccurate representation of law related to MMI and thus fails to constitute a valid medical opinion on MMI. *Page 18 
 {¶ 54} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying TTD compensation for the closed period August 7 through December 12, 2006, and to enter an order in a manner consistent with this magistrate's decision, that either grants or denies TTD compensation. *Page 1